UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :

THOMAS GEORGE,                   :

                  Plaintiff,      :

       v.                         :

                                     :    No. 08-CV-275 (ARR)(LB)

                                     :

                                     :

THE TJX COMPANIES, INC.,        :

                    Defendant.     :

                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT THE TJX COMPANIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Dated: New York, New York
       May 15, 2009

*Of Counsel:*

      Devjani Mishra
      Gloria Galant

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendant The TJX Companies, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 3

SUMMARY JUDGMENT STANDARD ........................................................................... 6

ARGUMENT ................................................................................................................... 7

I.      PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF
DISABILITY DISCRIMINATION OR FAILURE TO
ACCOMMODATE ........................................................................................... 7

      A.    Plaintiff Does Not Have A Covered Disability Under the ADA. ................ 9

      B.    Plaintiff Cannot Show That He Was A Qualified Person with a
Disability ............................................................................................... 9

      C.    Plaintiff Cannot Establish That TJX Failed To Accommodate Him
When  He Advised TJX He Did Not Require An Accommodation. ......... 11

      D.    Plaintiff Cannot Establish That TJX Terminated His  Employment
Because Of His "Disability." ................................................................. 12

II.     EVEN ASSUMING, ARGUENDO, THAT PLAINTIFF COULD
ESTABLISH A *PRIMA FACIE* CASE, HIS CLAIMS STILL FAIL
BECAUSE TJX HAD LEGITIMATE NON-DISCRIMINATORY
REASONS FOR TERMINATING HIS EMPLOYMENT .................................. 13

III.    PLAINTIFF'S SUBSEQUENT EMPLOYMENT OFFSETS ANY LOST
WAGES HE MAY HAVE SUSTAINED ......................................................... 14

IV.    PLAINTIFF IS NOT ENTILED TO PUNITIVE DAMAGES ........................... 15

CONCLUSION .............................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Verizon New York, Inc.*,
   No. 04 Civ. 4314 (MGC), 2008 WL 2047815 (S.D.N.Y. May. 13, 2008) ............................14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................6, 7

*Bresloff-Hernandez v. Horn*,
   No. 05 Civ. 0384 (JGK), 2007 WL 2789500 (S.D.N.Y. Sept. 25, 2007) ..............................10

*Brewer v. Sears, Roebuck & Co.,*
   315 F. Supp. 2d 295 (W.D.N.Y. 2004) ..................................................................................13

*Brown v. Pension Bds.*,
   488 F. Supp. 2d 403 (S.D.N.Y. 2007)..............................................................................7, 13

*Brown v. Triboro Coach Corp.*,
   153 F. Supp. 2d 172 (E.D.N.Y. 2001) ..................................................................................11

*Caruso v. Camilleri*,
   No. 04 Civ. 167A, 2008 WL 170321 (W.D.N.Y. Jan. 15, 2008) ............................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)....................................................................................................6

*Clarke v. Frank*,
   960 F.2d 1146 (2d Cir. 1992)..................................................................................................14

*Das v. Our Lady of Mercy Med. Ctr.*,
   No. 00 Civ. 2574 (JSM), 2002 WL 826877 (S.D.N.Y. Apr. 30, 2002) ................................12

*Delson v. Mineta*,
   144 Fed. Appx. (2d Cir. 2005)..................................................................................................7

*DeMar v. Car Freshner Corp.*,
   49 F. Supp. 2d 84 (N.D.N.Y. 1999)..................................................................................11

*DiCola v. SwissRe Holding*,
   996 F.2d 30 (2d Cir. 1993)..................................................................................................8

*Forde v. IBM Corp.*,
   No. 00 Civ. 6888 (JSR), 2003 WL 740220 (S.D.N.Y. Mar. 4, 2003) ....................................13

ii

*Giallanza v. Time Warner Cable*,
 No. 07-CV-6050, 2009 WL 857502 (W.D.N.Y. Mar. 30, 2009) ............................................10

*Gilbert v. Frank*,
 949 F.2d 637 (2d Cir. 1991)..............................................................................................10

*Greenway v. Buffalo Hilton Hotel*,
 143 F.3d 47 (2d Cir. 1998)..............................................................................................15

*Gross v. NBC*,
 232 F. Supp. 2d 58 (S.D.N.Y. 2002)..................................................................................12

*Halbrook v. Reichhold Chems., Inc.*,
 766 F. Supp. 1290 (S.D.N.Y. 1991) ....................................................................................8

*Jowers v. DME Interactive Holdings, Inc.*,
 No. 00 Civ. 4753 (LTS) (KNF), 2006 WL 1408671 (S.D.N.Y. May 22, 2006) ...................14

*Kolstad v. ADA*,
 527 U.S. 526 (1999)...............................................................................................16, 17

*Leahy v. Gap, Inc.*,
 No. 07 Civ. 2008 (DRH), 2008 WL 2946007 (E.D.N.Y. July 29, 2008) ................................9

*Levy ex rel. Levy v. Hustedt Chevrolet*,
 No. 05 Civ. 4832 (DRH) (MLO), 2008 WL 5273927 (E.D.N.Y. Dec. 17, 2008)....................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986)..........................................................................................................6

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792 (1973)..........................................................................................................7

*Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*,
 No. 02 Civ. 6493 (RJH), 2005 WL 2453078 (S.D.N.Y. Sept. 30, 2005) ..............................13

*Ragusa v. Malverne Union Free Sch. Dist.*,
 582 F. Supp. 2d 326 (E.D.N.Y. 2008) .................................................................................9

*Ralkin v. New York City Transit Auth.*,
 62 F. Supp. 2d 989 (E.D.N.Y. 1999) ..................................................................................12

*Saunders v. New Horizons Computer Learning Ctr. of Metro. N.Y.*,
 No. 99 Civ. 9532 (AGS), 2002 WL 1067823 (S.D.N.Y. May 29, 2002) ...............................11

*Shabat v. Blue Cross Blue Shield*,
 925 F. Supp. 977 (W.D.N.Y. 1996) ....................................................................................12

iii

*Shannon v. Fireman's Fund Ins. Co.*,
  136 F. Supp. 2d 225 (S.D.N.Y. 2001) ...................................................................14

*Shannon v. New York City Transit Auth.*,
  332 F.3d 95 (2d Cir. 2003).......................................................................................7

*Smith-Henze v. Edwin Gould Servs. for Children & Families*,
  No. 06 Civ. 3049 (LBS), 2008 WL 4937555 (S.D.N.Y. Nov. 19, 2008) ...............11

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993).................................................................................................8

*Strauss v. Microsoft Corp.*,
  No. 91 Civ. 5928 (SWK), 1995 WL 326492 (S.D.N.Y. June 1, 1995) ..................14

*Taylor v. Polygram Records*,
  No. 94 Civ. 7689 (CSH), 1999 WL 124456 (S.D.N.Y. Mar. 8, 1999)..............14, 15

*Texas Dep't of Community Affairs v. Burdine*,
  450 U.S. 248 (1981).............................................................................................7, 8

## STATUTE & RULE

42 U.S.C. § 1981a(b)(1).................................................................................................16

Fed. R. Civ. P. 56(c) .......................................................................................................6

Defendant, The TJX Companies, Inc. ("TJX"), by and through its attorneys, Seyfarth Shaw LLP, submits this memorandum of law in support of its motion for summary judgment.

## PRELIMINARY STATEMENT

Plaintiff Thomas George ("Plaintiff") alleges that TJX discriminated against him on the basis of an alleged disability in violation of the Americans with Disabilities Act[1] ("ADA"). However, Plaintiff's claim founders on his admission that the real reason he believes he was mistreated is because his first name is "Thomas."  Specifically, Plaintiff claims that Thomas Keenan, the Store Manager at the T.J. Maxx store where he worked, sought to remove him from the store so that he would be the only employee in the store with the name "Thomas."  Plaintiff alleges that Mr. Keenan discriminated against him by (1) putting a "curse" on him, which caused him to fall and break his arm; (2) not transferring him to another job after his fall, even though Plaintiff admits that he never asked for this or any other accommodation; and (3) terminating Plaintiff's employment for job abandonment after he admittedly walked off the job.  Setting aside these outrageous allegations, Plaintiff cannot pursue a cause of action simply because his first name is "Thomas."

As set forth below, the record contains absolutely no evidence to suggest that TJX discriminated against Plaintiff because of a purported disability or any other basis. As a threshold matter, Plaintiff, who was placed on a temporary five pound lifting restriction by his physician which was removed within weeks, cannot establish that he has a covered disability under the ADA that would entitle him to pursue a claim.

---

[1] Although paragraph 7 of the Complaint also lists age as a basis for discrimination, Plaintiff has not asserted any allegations of age discrimination or any violation of the Age Discrimination in Employment Act.  Further, Plaintiff admits that Mr. Keenan, the Store Manager who allegedly discriminated against him, was older than him. (TJX 56.1 ¶ 22).

Further, Plaintiff's belated claim that he could not perform the essential lifting functions of his Backroom Associate position only establishes that he is not an otherwise qualified person with a disability under the ADA.  To the extent that Plaintiff claims he could not perform the essential functions of his Backroom Associate position either with or without an accommodation, then he is not covered by the ADA.  Further, even if TJX were required to create a new position – which it was not – Plaintiff admittedly never asked Mr. Keenan, or any other TJX employee, for a transfer, modification  or any other accommodation.  To the contrary, Plaintiff provided medical documentation to TJX establishing that he did not need any accommodation and could return to work without any work restrictions.

Finally, the undisputed evidence establishes that TJX terminated Plaintiff's employment for only one reason – job abandonment.  Both Plaintiff and Sophia Thomas, his wife, admittedly walked off the job in October 2006 after Ms. Thomas had an argument with a co-worker and did not return to work.  Tellingly, this was not the first time that Plaintiff and Ms. Thomas abandoned their jobs at T.J. Maxx by walking out of the store, as both had been terminated for a prior instance of job abandonment three months earlier and therefore knew the consequence of walking off the job.  However, after the first instance, Mr. Keenan, the same Store Manager Plaintiff now claims discriminated against him, gave both Plaintiff and Ms. Thomas a second chance by allowing them to return to work.  It is irrational to suggest that Mr. Keenan would return Plaintiff to work after he walked off the job and then seek to terminate his employment just a few months later based on some animus against him.

Ultimately, there is no evidence to suggest that TJX's decision to terminate his employment was related to his broken arm or any purported "disability."  Plaintiff's claims, which rest upon his unsupported speculation that Mr. Keenan wanted to get rid of him because

they shared the same name and nothing more, are wholly without merit and should be summarily dismissed as a matter of law.

## **STATEMENT OF FACTS**

The material facts as to which TJX contends there are no genuine issues to be tried are set forth more fully in Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts (hereinafter "56.1 Stmt."), and are incorporated herein by reference.

TJX is a leading off-price retailer that operates T.J. Maxx apparel and home fashion stores in the United States, including a T.J. Maxx store in New Hyde Park, New York.  (56.1 Stmt. ¶¶ 1-2).  Plaintiff began working as a full-time Backroom Associate at that store on June 5, 2004.  (*Id.* ¶ 6).  As a Backroom Associate, Plaintiff's principal duty was to process store merchandise, which requires lifting, unloading and stacking hundreds of boxes of inventory on a daily basis.  (*Id.* ¶ 7).  Plaintiff agrees that such responsibilities accounted for 70% of his job duties.  (*Id.* ¶ 8).  Throughout his employment at T.J. Maxx, Plaintiff also worked as a part-time produce clerk for Pathmark, a job that required significant lifting and stacking responsibilities.  (*Id.* ¶¶ 3-5). Sophia Thomas, Plaintiff's wife, began working at the same T.J. Maxx store as a Backroom Associate in or about July 2004.  (*Id.* ¶ 15).

In February, 2006 Thomas Keenan became the new Store Manager of the New Hyde Park store.  (56.1 Stmt. ¶ 19).  Plaintiff believes that Mr. Keenan did not like him instantly, because they shared the same first name and Mr. Keenan supposedly only wanted one employee in the store named Thomas.  (*Id.* ¶¶ 20-21).

On February 14, 2006, Plaintiff fractured his right arm after slipping on ice in the store parking lot.  (56.1 ¶ 23).  Plaintiff accuses Mr. Keenan of causing his injury by putting a "curse" on him so that Plaintiff would leave the store and Mr. Keenan would be the only "Thomas" remaining.  (*Id.* ¶ 24).  Plaintiff took a medical leave of absence following the accident.  (*Id.* ¶¶

37-44). On or about March 17, 2006, Plaintiff's treating physician, Dr. Paul Miller, cleared

Plaintiff to return to work with a *temporary* five pound lifting restriction, but Plaintiff admits he

did not request any accommodation of this temporary restriction from TJX.  (*Id.* ¶¶ 45, 47).

Instead, Plaintiff asked his doctor to release him from the restriction, and on April 7, 2006,

Plaintiff provided TJX with a note from Dr. Miller releasing him from the temporary lifting

restriction and returning him to full duty.  (*Id.* ¶¶ 48, 49).  Again, Plaintiff did not ask TJX for

any accommodation upon or after his return to full duty, nor did he submit any additional

medical documentation to TJX.  (*Id.* ¶ 53).  Rather, as permitted by his treating physician,

Plaintiff resumed his full-time work duties at T.J. Maxx on or about April 10, 2006.  (*Id.* ¶¶ 52-

53).

On or about July 6, 2006, Plaintiff submitted a doctor's note on behalf of Ms. Thomas,

his wife, who failed to call in or show up for work.  (56.1 Stmt. ¶ 54).  Mr. Keenan advised

Plaintiff that Ms. Thomas would have to call to report her own absence, consistent with TJX

policy.  (*Id.* ¶ 55).  However, Plaintiff thought the note was sufficient and that Ms. Thomas

should not have to call into the store as directed by Mr. Keenan.  (*Id.* ¶ 57).  Plaintiff also

believed that Mr. Keenan was also out to get Ms. Thomas or treat her badly because of her last

name.  (*Id.* ¶¶ 67, 69).

On or about July 13, 2006, Plaintiff accused Mr. Keenan of telling Plaintiff's co-worker

Nelson Monroid that if Plaintiff could not perform his job duties he would have to leave. (56.1

Stmt. ¶ 58).  Plaintiff admits that he did not personally hear Mr. Keenan make such a statement.

(*Id.* ¶ 59).  However, Plaintiff did not give Mr. Keenan an opportunity to explain this purported

hearsay statement nor did he ask Mr. Keenan whether he had even made the statement at all.  (*Id.*

4

¶ 60).  Rather, Plaintiff accused Mr. Keenan, "You broke my arm," and simply walked off the job prior to the end of his shift.  (*Id.* ¶ 61).

Neither Plaintiff nor Ms. Thomas called in or showed up for work for the week of July 14, 2006 through July 18, 2006.  (56.1 Stmt. ¶ 62).  TJX therefore discharged both Plaintiff and Ms. Thomas for job abandonment.  (*Id.* ¶ 70).  In a letter to Fran Cetrone, Regional Manager of Human Resources, dated July 19, 2006, Plaintiff inquired whether he and Ms. Thomas could return to work at TJX.  (*Id.* ¶ 71).  Mr. Keenan agreed to give both Plaintiff and Ms. Thomas a second chance and returned both of them to work on or about July 21, 2006.  (*Id.* ¶ 72).  Again, upon his return, Plaintiff did not submit any further medical documentation supporting any need for an accommodation nor did he request that Mr. Keenan provide him with an accommodation. (*Id.* ¶ 73).

On October 26, 2006, after having an argument with a co-worker over hanging sweaters, Ms. Thomas walked off the job.  (56.1 Stmt. ¶ 75).  Plaintiff followed suit, walking off the job after Ms. Thomas and never returned to the store.  (*Id.* ¶ 76).  Just as it had before, TJX discharged Plaintiff and Ms. Thomas for job abandonment.  (*Id.* ¶ 80).  However, Plaintiff believes that Mr. Keenan sought to have him and his wife removed from the store because Mr. Keenan wanted to be the only employee in the store with the name Thomas.  (*Id.* ¶ 79).

TJX's Code of Conduct contains a non-discrimination policy and a procedure for complaining about workplace issues, including discrimination of any kind. (56.1 Stmt. ¶ 82). Plaintiff received a copy of the Code of Conduct several times during his employment and was aware that he could complain to TJX's human resources department about workplace issues. (*Id.* ¶¶ 81, 83).  However, neither Plaintiff nor Ms. Thomas complained to Human Resources

regarding any issues concerning Mr. Keenan until after they abandoned their jobs in October 2006. (*Id.* ¶ 84).

On January 10, 2007, Plaintiff began full-time employment with 7-Eleven with a starting salary of $8.50 per hour, or $1.25 more per hour than what he was earning at TJX at the time of his discharge.  (56.1 Stmt. ¶ 87).  Plaintiff remains employed full-time with 7-Eleven and now earns $10.00 per hour, approximately $3.00 more an hour than his last salary at TJX.  (*Id.* ¶ 89). Plaintiff also continues to work at both Pathmark and 7-Eleven with no restrictions or accommodations.  (*Id.* ¶¶ 86, 90).

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the pleadings, depositions, affidavits, and other discovery establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The party seeking summary judgment bears the initial responsibility of identifying the bases for its motion and those portions of the record that demonstrate the absence of a genuine factual issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the non-moving party must proffer admissible evidence demonstrating that a trial is required because disputed issues of material fact exist.  *Liberty Lobby*, 477 U.S. at 249.  For Plaintiff to survive summary judgment, he "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, he must put forward sufficient admissible evidence from which a reasonable fact-finder could return a verdict in his favor.  *Liberty Lobby*, 477 U.S. at 248-49; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

6

Importantly, Plaintiff cannot escape summary judgment by presenting conclusory or speculative evidence. *Liberty Lobby*, 477 U.S. at 248. Here, however, Plaintiff's own testimony conclusively establishes that TJX is entitled to summary judgment, as his claims are founded on nothing more than unsupported, conclusory speculation. As such, TJX respectfully requests that summary judgment be granted as to each of Plaintiff's claims.

## ARGUMENT

### I.   PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE CASE* OF DISABILITY DISCRIMINATION OR FAILURE TO ACCOMMODATE

Plaintiff's claims of  disability discrimination are subject to the familiar three-step burden shifting analysis enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981). Accordingly, Plaintiff must establish a *prima facie* case of disability discrimination. To do this, Plaintiff must demonstrate that (1) TJX is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he is otherwise qualified to perform his job; and (4) he suffered an adverse employment decision *because of* his disability. *See Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003); *Brown v. Pension Bds.*, 488 F. Supp. 2d 403, 406 (S.D.N.Y. 2007).

Similarly, in order to establish a *prima facie case* for a failure to accommodate claim, Plaintiff must also demonstrate that (1) TJX is subject to the ADA; (2) he is an individual with a disability within the meaning of the ADA; (3) with or without reasonable accommodation, he could perform the essential functions of the job he held; and (4) TJX had notice of Plaintiff's need for an accommodation and failed to provide such accommodation. *Delson v. Mineta*, 144 Fed. Appx. (2d Cir. 2005). This is something that Plaintiff cannot do.

Even if Plaintiff could establish a *prima facie* case on either of his claims, TJX need only produce a legitimate, nondiscriminatory reason for the challenged employment action. *Id.*

TJX's burden is simply one of articulation — it is *not* required to prove the absence of a discriminatory motive in its decisions regarding Plaintiff. *DiCola v. SwissRe Holding,* 996 F.2d 30, 32 (2d Cir. 1993). Once TJX proffers a legitimate, non-discriminatory reason for its employment actions, "'the presumption raised by the *prima facie* case is rebutted, and drops from the case,'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citation omitted), and Plaintiff bears the ultimate burden of proving, through pretext or otherwise, that the real reason for TJX's actions was discrimination. *Id.* Where, as here, the employer does more than merely articulate a plausible non-discriminatory reason for its employment actions, and actually "substantiat[es] that reason by proving that it has a sound and factually supported basis, [Plaintiff's] task of showing that this reason was a pretext will be more difficult." *Halbrook v. Reichhold Chems., Inc.*, 766 F. Supp. 1290, 1295 (S.D.N.Y. 1991) (quotations omitted), *aff'd,* 956 F.2d 1159 (2d Cir. 1992). At all times, Plaintiff retains the ultimate burden of proving discrimination. *See Burdine,* 450 U.S. at 253.

Here, Plaintiff cannot make out even a *prima facie* claim of disability discrimination or failure to accommodate because he cannot show that (1) he is a qualified person with a covered disability; (2) he requested, or even needed, an accommodation; and (3) he was terminated because of his disability. Even assuming, *arguendo*, that Plaintiff could present a *prima facie* case, it was clearly a legitimate and non-discriminatory reason for TJX to terminate Plaintiff's employment after he had abandoned his job not once, but twice. Plaintiff has failed to offer any evidence, beyond his conclusory beliefs, that TJX's stated reason was a pretext to failing to accommodate him and/or terminating his employment based upon his disability. As set forth in detail below, summary judgment should be granted in this case.

## A.      Plaintiff Does Not Have A Covered Disability Under the ADA.

It is well settled that "short term, temporary restrictions are not 'substantially limiting' and do not render a person 'disabled'" for purposes of the ADA.  *See Levy ex rel. Levy v. Hustedt Chevrolet*, No. 05 Civ. 4832 (DRH) (MLO), 2008 WL  5273927, at *5 (E.D.N.Y. Dec. 17, 2008) (citation omitted)[2]; *Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp. 2d 326 (E.D.N.Y. 2008); *Leahy v. Gap, Inc.*, No. 07 Civ. 2008 (DRH), 2008 WL 2946007, at *4 (E.D.N.Y. July 29, 2008).  Here, Plaintiff had a broken arm, and the undisputed evidence establishes that the only limitation that Plaintiff's treating physician imposed was a temporary five pound lifting restriction.  That restriction was subsequently removed at Plaintiff's own request, and Plaintiff was cleared to return to full duty without any request or need for an accommodation.

Plaintiff cannot show that his temporary lifting restriction, which was subsequently removed, rises to the level of a substantial limitation and a covered disability under the ADA. Significantly, Plaintiff resumed his lifting duties at both Pathmark and T.J. Maxx without an accommodation after his doctor cleared him to return to work on April 10, 2006, and never requested an accommodation at any time prior to abandoning his job in October 2006.  Similarly, Plaintiff currently works at both Pathmark and 7-Eleven without any work restrictions.  Plainly, Plaintiff does not have a covered disability and cannot pursue a claim under the ADA.

## B.      Plaintiff Cannot Show That He Was A Qualified Person with a Disability.

An employee who cannot perform the essential functions of his/her position either with or without an accommodation is not an otherwise qualified person with a disability under the ADA.  *See Caruso v. Camilleri*, No. 04 Civ. 167A, 2008 WL 170321, at *22 (W.D.N.Y. Jan. 15,

---

[2]      Unreported decisions cited herein are contained in the Compendium of Unreported Decisions Cited in Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, filed herewith.

2008) ("An employee who cannot perform the essential functions of a job, either with or without a reasonable accommodation, is not 'otherwise qualified' for the job within the meaning of the ADA because an employer is not required to eliminate the essential functions of the job in order to accommodate the impaired employee."); *Bresloff-Hernandez v. Horn*, No. 05 Civ. 0384 (JGK), 2007 WL 2789500, at *5 (S.D.N.Y. Sept. 25, 2007) (granting summary judgment to employer where employee was unable to show that she could perform the essential functions of her job).

Although Plaintiff admits that he submitted documentation to TJX showing that he did not have any physical restrictions resulting from his injury, he now claims that he could not perform the lifting and stacking duties of the Backroom Associate position, which he concedes were an essential function of the job and constituted as much as 70% of his responsibilities. (56.1 Stmt. ¶¶ 7-9).  If Plaintiff, as he now alleges, was unable to perform the essential functions of his Backroom Associate position with or without an accommodation, then he cannot show that he was an otherwise qualified person with a disability and cannot make out a *prima facie* case for discrimination under the ADA.

Additionally, even if Plaintiff could show that he was an otherwise qualified person with a disability, the ADA would not require TJX to simply forego the essential job functions of his position and create a light duty job to meet Plaintiff's belatedly-expressed needs.  To the contrary, courts in this Circuit have consistently held that an employer is not required to eliminate an essential job function as a "reasonable" accommodation.  *See, e.g.*, *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991) (stating that "reasonable accommodation does not mean elimination of any of the job's essential functions") (quotations omitted); *Giallanza v. Time Warner Cable*, No. 07-CV-6050, 2009 WL 857502, at *9 (W.D.N.Y. Mar. 30, 2009)

(recognizing that a reasonable accommodation does not require the employer to eliminate any of the job's essential functions); *Smith-Henze v. Edwin Gould Servs. for Children & Families*, No. 06 Civ. 3049 (LBS), 2008 WL 4937555 (S.D.N.Y. Nov. 19, 2008) (rejecting plaintiff's argument that changing the essential functions of her position constitutes an accommodation that would permit her to perform the essential functions of the position).

### C.   Plaintiff Cannot Establish That TJX Failed To Accommodate Him When He Advised TJX He Did Not Require An Accommodation.

A critical element of asserting a viable failure to accommodate claim under the ADA is that the employee either actually requested, or submitted to the employer documentation supporting the need for, an accommodation.  *See Brown v. Triboro Coach Corp.*, 153 F. Supp. 2d 172, 187 (E.D.N.Y. 2001) (dismissing claims brought under the ADA where plaintiff neither established that he was a qualified individual with a disability nor showed that he requested any reasonable accommodation); *DeMar v. Car Freshner Corp.*, 49 F. Supp. 2d 84, 95-96 (N.D.N.Y. 1999) ("[I]f the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one.") (quotations omitted); *Saunders v. New Horizons Computer Learning Ctr. of Metro. N.Y.*, No. 99 Civ. 9532 (AGS), 2002 WL 1067823, at *5 (S.D.N.Y. May 29, 2002) ("It is axiomatic that if an employee fails to request an accommodation, the employer cannot be held liable for not providing one.") (quotations omitted), *aff'd*, 68 Fed. Appx. 224 (2d Cir. 2003).

By his own admission, Plaintiff never requested any accommodation from TJX.

To the contrary, Plaintiff provided TJX with documentation from his treating physician establishing that he was *not* in need of an accommodation.  Plaintiff cannot now claim that TJX "failed to accommodate" his "disability" when he sought no such accommodation during his employment.

11

**D.      Plaintiff Cannot Establish That TJX Terminated His
Employment Because Of His "Disability."**

Finally, in order to establish his *prima facie case* of disability discrimination, Plaintiff
must point to some admissible evidence that would raise an inference that TJX terminated his
employment *because of* his disability.  This is something he simply cannot do.

Plaintiff nowhere alleges that Mr. Keenan sought to discriminate against him because of
his disability.  Instead, Plaintiff asserts repeatedly that Mr. Keenan (1) caused him to fall and
break his arm by putting a "curse" on him; (2) failed to address his wife's issues with a co-
worker because her last name is Thomas; and (3) sought to remove him and his wife from the
store simply because he wanted to be the only person in the store with the name Thomas.  Not
only are Plaintiff's beliefs entirely conclusory, they weigh heavily against his discrimination
claims.  Such allegations, even if true (which they are not), establish only that it was Plaintiff's
name, rather than his injury and/or unexpressed need for an accommodation, that motivated Mr.
Keenan's decision to terminate his employment.

Additionally, Plaintiff's reliance on beliefs and superstitions regarding Mr. Keenan's
motives is wholly insufficient to create an inference of discrimination.  *See Das v. Our Lady of
Mercy Med. Ctr.*, No. 00 Civ. 2574 (JSM), 2002 WL 826877, at *7 (S.D.N.Y. Apr. 30, 2002)
(granting summary judgment where plaintiff made no showing of discrimination beyond his own
speculation), *aff'd*, 56 Fed. Appx. 12 (2d Cir. 2003); *Gross v. NBC,* 232 F. Supp. 2d 58, 72
(S.D.N.Y. 2002) ("[Plaintiff's] conclusory statements and subjective feelings - not facts - in
support of her claims that she was treated differently. . . . cannot withstand a properly supported
motion for summary judgment."); *Ralkin v. New York City Transit Auth.,* 62 F. Supp. 2d 989,
997 (E.D.N.Y. 1999) (conclusory allegations of discrimination will not defeat summary
judgment); *Shabat v. Blue Cross Blue Shield*, 925 F. Supp. 977, 988 (W.D.N.Y. 1996)

("'[E]mployee's subjective belief . . . is not enough to survive a summary judgment motion.'"), *aff'd sub nom. Shabat v. Billotti*, 108 F.3d 1370 (2d Cir. 1997) (table); *Brewer v. Sears, Roebuck & Co.,* 315 F. Supp. 2d 295, 300 (W.D.N.Y. 2004) (plaintiff's claim based "primarily on his subjective beliefs that his age was the motivation behind [the employer's] decision making process" is insufficient to establish a *prima facie* case).

The undisputed evidence here establishes that Plaintiff was terminated for only one reason, namely, job abandonment. Further, Plaintiff was well aware that job abandonment was grounds for termination, as he had abandoned his job three months earlier and been terminated, only to be reinstated because Mr. Keenan – the other "Thomas" – wished to give him a second chance. Consequently, even if Plaintiff overcomes the hurdle of establishing that he is a qualified individual with a "disability" under the ADA, his *prima facie* case still fails because he cannot establish that he was terminated *because of* his "disability."

## II. EVEN ASSUMING, *ARGUENDO,* THAT PLAINTIFF COULD ESTABLISH A *PRIMA FACIE CASE,* HIS CLAIMS STILL FAIL BECAUSE TJX HAD LEGITIMATE NON-DISCRIMINATORY REASONS FOR TERMINATING HIS EMPLOYMENT

It is well settled that job abandonment is a legitimate non-discriminatory reason to terminate an employee. *See, e.g.*, *Brown*, 488 F. Supp. 2d at 403, 406, 410 (holding that job abandonment was a legitimate, non-discriminatory, non-retaliatory cause for termination after plaintiff was absent for two days in a row and failed to call to justify the absence); *Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*, No. 02 Civ. 6493 (RJH), 2005 WL 2453078, at *19 (S.D.N.Y. Sept. 30, 2005) ("[A]n employer is entitled to terminate an employee perceived to be engaging in insubordinate behavior or job abandonment."); *Forde v. IBM Corp.*, No. 00 Civ. 6888 (JSR), 2003 WL 740220, at *4 (S.D.N.Y. Mar. 4, 2003) (holding that job abandonment was a legitimate, non-discriminatory reason "well within [defendant's] business prerogative" where

plaintiff was absent for over a week and did not call in).  "Abandoning one's job is the equivalent of resigning from a job; it is not an action taken by the employer, but one taken by the employee."  *Adams v. Verizon New York, Inc*., No. 04 Civ. 4314 (MGC), 2008 WL 2047815, at *4 (S.D.N.Y. May. 13, 2008).

On this insubstantial record, Plaintiff cannot raise even an inference of discrimination in this case, much less prove that TJX's decision to terminate his employment for job abandonment was pretextual.  Accordingly, Plaintiff's claims should be dismissed as a matter of law.

### III.   PLAINTIFF'S SUBSEQUENT EMPLOYMENT OFFSETS ANY LOST WAGES HE MAY HAVE SUSTAINED

Even assuming *arguendo* that Plaintiff can assert a viable discrimination claim against TJX, he cannot establish that he is entitled to damages.  When awarding damages a court should place a victim of unlawful discrimination in the position he would have been in absent the discrimination.  *Jowers v. DME Interactive Holdings, Inc.*, No. 00 Civ. 4753 (LTS) (KNF), 2006 WL 1408671, at *2 (S.D.N.Y. May 22, 2006) (citing *Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 230 (S.D.N.Y. 2001)).  A prevailing plaintiff is thereby entitled to back pay from the date of discharge only until the date the plaintiff secures employment that is comparable to that from which he was unlawfully terminated, less interim earnings or amounts earnable with reasonable diligence.  *Strauss v. Microsoft Corp.*, No. 91 Civ. 5928 (SWK), 1995 WL 326492, at *5 (S.D.N.Y. June 1, 1995).  Hence, the rule in the Second Circuit is that the employer's liability for back pay is reduced by the amount of the plaintiff's interim earnings from other employment. *Clarke v. Frank*, 960 F.2d 1146, 1151 (2d Cir. 1992) (subtracting earnings from work accepted by plaintiff after discharge from back pay award); *Taylor v. Polygram Records*, No. 94 Civ. 7689 (CSH), 1999 WL 124456, at *26 (S.D.N.Y. Mar. 8, 1999) (reducing plaintiff's back pay award

by amount of earnings from temporary work during period before she rejected offer of reinstatement).

It is undisputed that for the period between January 10, 2007 and the present Plaintiff has worked full-time at 7-Eleven, earning as much as $3.00 more an hour than he earned at TJX. (56.1 Stmt. ¶¶ 87, 89). Moreover, for the period between October 26, 2006, his termination from TJX, and January 10, 2007, Plaintiff admitted that he did not search for any other employment opportunities. (*Id.* ¶ 88).

An employer is relieved of the burden of establishing the existence of comparable employment where, as here, it can prove that the employee made no reasonable effort to seek such employment. *See Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 54 (2d Cir. 1998) ("[A]n employer should not be saddled by a requirement that it show other suitable employment in fact existed . . . when the employee, who is capable of finding replacement work, failed to pursue employment at all."). Here, Plaintiff admits that the only job he applied for following his termination from TJX was with 7-Eleven, where he began working in January 2007. As such, Plaintiff did not mitigate his damages for the period between October 2006 and January 2007, and has more than offset any losses he sustained during that period given his higher wages since then.

Based upon the foregoing, the Court should find that Plaintiff is not entitled to damages for the periods of time he failed to search for comparable employment opportunities or since he obtained his higher paying job with 7-Eleven.

## IV.    PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

Lastly, even if TJX's motion for summary judgment were denied as to liability, Plaintiff would not be entitled to punitive damages, because TJX implemented and enforced policies

forbidding discriminatory practices or retaliation of any kind throughout Plaintiff's employment, and Plaintiff failed to avail himself of these policies.

An award of punitive damages in an ADA case requires a showing "that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).  "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law."  *Kolstad v. ADA*, 527 U.S. 526, 535 (1999).  In other words, for punitive damages to be awarded, Plaintiff must show that TJX, as opposed to Mr. Keenan, "discriminate[d] in the face of a perceived risk that its actions w[ould] violate federal law."  *Id.* at 536.  Where an employer has an overall practice of making "good faith efforts to comply with" anti-discrimination laws, it may not be held vicariously liable for punitive damages.  *Id.* at 545 (citation omitted).

There is no evidence in this record that would suggest that TJX acted with "reckless indifference" to Plaintiff's rights.  To the contrary, TJX implemented and enforced policies forbidding discriminatory practices and informed Plaintiff of its internal complaint process from the commencement of his employment.  *See Kolstad*, 527 U.S. at 544 (holding that the existence of a written non-discrimination policy instituted in good faith "goes a long way towards dispelling any claim about the employer's 'reckless' or 'malicious' state of mind") (citation omitted).  Plaintiff admits that he was aware of the complaint process, but also concedes that he did not request an accommodation or bring any of the issues he had with Mr. Keenan to the attention of TJX's Human Resources Department until after he walked off the job.

On this record, Plaintiff's bare allegations of a "curse" or his Store Manager's desire to be the "only Tom" in the store cannot support a claim for punitive damages.  Notably, Plaintiff

also abandoned his job in July 2006, and was returned to work after Mr. Keenan decided to give

him a second chance – hardly a "malicious" act.  Given TJX's well-documented, good faith

efforts to implement and enforce its anti-discrimination policies, to provide an internal complaint

mechanism and to educate employees about their rights under the law, the Court should dismiss

Plaintiff's punitive damage claims.  *Kolstad*, 527 U.S. at 545.

## **CONCLUSION**

For the foregoing reasons, TJX respectfully requests that the Court grant its motion for

summary judgment, dismiss each of Plaintiff's claims with prejudice, and grant such other relief

as the Court may deem just and proper.

Dated: New York, New York
        May 15, 2009

                            Respectfully submitted,
                            SEYFARTH SHAW LLP


                            By: s/ Gloria Galant
                                Devjani Mishra
                                Gloria Galant
                                620  Eighth Avenue
                                New York, New York 10018
                                Telephone:  (212) 218-5500
                                Fax:  (212) 218-5526
                                dmishra@seyfarth.com
                                ggalant@seyfarth.com

                            Attorneys for Defendant
                            The TJX Companies, Inc.

NY1 26568148.3